Aaron W. Baker, OSB No. 922220
Email: aaron@awbakerlaw.com
Serena L. Liss, OSB No. 154799
Email: serena@awbakerlaw.com
Cameron J. Taylor, OSB No. 256661
Email: cameron@awbakerlaw.com
BAKER & LISS PC
1000 SW Broadway, Suite 2300
Portland, OR 97205
Phone: 503/ 234-8800
Fax: 503/ 525-0650

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **KEITH CODDINGTON**, an individual, | Case No. 1:25-cv-02363 |
| Plaintiff, | **COMPLAINT** |
| v. | (42 U.S.C. § 12112; 29 U.S.C. § 2615; ORS 659A.112; ORS 659A.109; ORS 659A.118; ORS 659A.199; ORS 659A.040; ORS 659A.233; Common Law Wrongful Discharge) |
| **ASANTE dba ASANTE ROGUE REGIONAL MEDICAL CENTER**, a domestic nonprofit corporation, | |
| Defendant. | DEMAND FOR JURY TRIAL |

///

///

///

Page 1 – COMPLAINT

**Nature of the Action**

1.

Plaintiff brings this action for monetary relief, damages, costs, punitive damages, and attorney fees for himself to redress injuries done to him by Defendant Asante dba Asante Rogue Regional Medical Center and officers, employees, and/or agents of said Defendant in contravention of his federally protected rights in violation of the Americans with Disabilities Act, as codified, 42 U.S.C. § 12112 ("ADA") and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2615 *et seq.* ("FMLA") and his state protected rights under ORS 659A.109, ORS 659A.112, ORS 659A.118, ORS 659A.199, ORS 659A.040, ORS 659A.233, and common law wrongful discharge.

**Jurisdictional Allegations**

2.

The court has jurisdiction over Plaintiff's federal claims pursuant to 42 U.S.C. § 2000 *et seq.*, 28 U.S.C. §§ 1331, 1343, and supplemental jurisdiction over Plaintiff's state claims pursuant to 42 U.S.C. § 1367 as the state claims arise from the same nucleus of operative facts as the federal claims.

3.

Venue is proper within the District of Oregon, Medford Division, pursuant to 28 U.S.C. § 1391(b) because all or substantially all the events or omissions giving rise to the claims arose in this judicial district.

**General Factual Allegations**

4.

At all material times, Defendant Asante dba Asante Rogue Regional Medical Center (hereinafter "Defendant") was and is a domestic nonprofit corporation with its principal place of business in Medford, Oregon.

BAKER & LISS PC
1000 SW BROADWAY
SUITE 2300
PORTLAND, OR 97205
PHONE: (503) 234-8800

5.

Defendant transacted business, including but not limited to hiring and employing Plaintiff, in Medford, Oregon.

6.

Plaintiff is and was domiciled in Jackson County, Oregon at all material times herein.

7.

At all material times herein, Plaintiff was supervised by Defendant's management, employees, and/or agents and Plaintiff relied on the actual or apparent authority of Defendant's management, employees, and/or agents.

8.

Defendant discriminated against Plaintiff by engaging in and/or allowing a continuing course of conduct, including but not limited to discrimination and harassment on the basis of Plaintiff's disabilities, perceived disabilities, and/or record of disabilities, and retaliated against Plaintiff for engaging in protected activities including but not limited to filing workers' compensation claims; reporting unlawful employment practices; reporting evidence he reasonably believed was violation of law, rule, and/or regulation; requesting and/or taking protected leave; and attempting to engage in the interactive process.

## Factual Allegations

9.

Plaintiff was hired by Defendant on or about August 1, 2003. During his employment, Defendant promoted Plaintiff. Plaintiff's final position with Defendant was critical care registered nurse (hereinafter "RN") in Defendant's Cardiovascular Intensive Care Unit (hereinafter "CVICU"). Plaintiff also served in the position of charge nurse approximately four times per pay period.

Page 3 – COMPLAINT

BAKER & LISS PC
1000 SW BROADWAY
SUITE 2300
PORTLAND, OR 97205
PHONE: (503) 234-8800

10.

Plaintiff is a member of the Oregon Nurses Association (hereinafter "ONA") union and serves his union in the role of shop steward. The terms of Plaintiff's employment are generally governed by the collective bargaining agreement (hereinafter "CBA") between the ONA and Defendant. To the extent the CBA does not govern an issue, Defendant's policies and applicable state and federal law apply.

11.

Plaintiff also held the elected roles of ONA Contract Negotiator, CVICU Staffing Committee Primary Representative, and Co-Chair of the Asante Nurse Staffing Committee. Plaintiff's professional responsibilities within his various roles included, but were not limited to, upholding the standards of nursing, reporting what Plaintiff reasonably believed to be violations of patient safety, representing the rights of all nurses within the ONA collective bargaining unit, ensuring that all units within Defendant's hospital met nurse staffing law requirements, and educating nursing staff about the implications of changes in the law.

12.

Throughout the duration of Plaintiff's employment with Defendant, Plaintiff frequently reported evidence he believed in good faith to be violations of federal and state law, rule, and/or regulation. Plaintiff also reported violations of the CBA and Defendant's violations of Defendant's own policies and procedures. For example, Plaintiff's reports of Defendant's violations include, but are not limited to, wage and hour violations, nurse staffing requirements, patient and employee safety, workers' compensation rights, medical leave, disability discrimination, and retaliation.

13.

Defendant took retaliatory actions against Plaintiff for his good faith reporting on multiple occasions throughout Plaintiff's employment. These

Page 4 – COMPLAINT

retaliatory actions include, but are not limited to, denying Plaintiff's requests for reasonable accommodations, failing to engage in the interactive process in good faith, restricting Plaintiff's access to medical care, reducing Plaintiff's hours, placing Plaintiff on administrative leave, issuing Plaintiff a final warning, and terminating Plaintiff's employment.

14.

In or about late 2020, Plaintiff observed that Defendant's management held staff meetings in the staff break room. These meetings were in direct violation of Defendant's social distancing and COVID isolation requirements. Plaintiff reported Defendant's management for their refusal to enforce social distancing and COVID isolation requirements in Defendant's workplace. On information and belief, Defendant's failure to enforce social distancing and COVID isolation requirements resulted in an outbreak of COVID amongst Defendant's staff.

15.

In or about early January of 2021, Plaintiff contracted COVID while performing his job within the course and scope of his employment.

16.

On or about January 9, 2021, Plaintiff filed a workers' compensation claim for his COVID symptoms.

17.

Shortly thereafter, Defendant reduced Plaintiff's charge nurse shifts from four shifts per pay period to three shifts per pay period. Defendant's pay period operates on a two-week cycle.

18.

On or about June 16, 2021, Plaintiff's labor representative filed a grievance against Defendant asserting Plaintiff's good faith belief that the reduction of his

BAKER & LISS PC
1000 SW BROADWAY
SUITE 2300
PORTLAND, OR 97205
PHONE: (503) 234-8800

charge nurse shifts constituted retaliation for filing a workers' compensation claim, which Plaintiff believed to be a violation of federal and state law, rule, and/or regulation.

19.

In the years that followed, Plaintiff continued to have severe COVID symptoms affecting his respiratory and cardiovascular systems. In or about January of 2023, Plaintiff was diagnosed with long COVID, which qualifies as a disability and includes symptoms of fatigue and shortness of breath (dyspnea). Despite Plaintiff's disability, he was able, with accommodation, to perform each essential function of his position with Defendant.

20.

On or about January 2, 2023, Plaintiff developed sudden cardiac symptoms including chest pain and shortness of breath while at work related to his long COVID. Plaintiff was immediately hospitalized at Defendant's facility and was treated for his symptoms. Plaintiff subsequently filed an additional workers' compensation claim for his post-COVID fatigue.

21.

On or about January 18, 2023, Plaintiff's medical care providers released Plaintiff back to work.

22.

On or about February 18, 2023, Plaintiff submitted a written request for reasonable accommodations for his long COVID including:

(1) Regularly occurring meal and rest breaks during scheduled working hours;

(2) Ten hours of uninterrupted rest and recovery periods between shifts;

(3) Personal protective equipment (hereinafter "PPE"), including a forced air

Page 6 – COMPLAINT

BAKER & LISS PC
1000 SW BROADWAY
SUITE 2300
PORTLAND, OR 97205
PHONE: (503) 234-8800

respirator mask, to accommodate Plaintiff's reduced pulmonary function; and

(4) Continuation of Plaintiff's work schedule consisting of six days on shift followed by eight days off shift working 7:00 pm to 7:00 am per shift.

23.

On or about March 27, 2023, Plaintiff's treating physician, who is also Defendant's employee, provided Defendant with a letter reiterating Plaintiff's request for reasonable accommodations. Plaintiff's doctor also noted that "if [Defendant has] any questions regarding these accommodations, please contact our office," or words to that effect.

24.

On information and belief, Defendant prohibited Plaintiff's doctor from treating Plaintiff shortly after he had submitted Plaintiff's workers' compensation paperwork and requested reasonable accommodations on Plaintiff's behalf. On information and belief, Defendant also prohibited its Occupational Health Department from scheduling future appointments with Plaintiff after the submission of Plaintiff's request for reasonable accommodations. This prohibition by Defendant interfered with Plaintiff's ability to complete necessary paperwork related to his workers' compensation claim and his request for reasonable accommodations.

25.

On or about March 30, 2023, Defendant informed Plaintiff that Plaintiff's "managers are advising that [Plaintiff] be placed on two-week leave," or words to that effect. Defendant did in fact place Plaintiff on administrative leave for approximately two weeks from on or about March 30, 2023 through April 13, 2023. Plaintiff subsequently reported that Defendant retaliated against Plaintiff by

BAKER & LISS PC
1000 SW BROADWAY
SUITE 2300
PORTLAND, OR 97205
PHONE: (503) 234-8800

placing him on leave because Plaintiff filed a workers' compensation claim and requested reasonable accommodations.

26.

Defendant's Human Resources Department (hereinafter "HR") reached out to Plaintiff on multiple occasions throughout the duration of his administrative leave to inquire about his request for reasonable accommodations. Defendant's HR stated in part: "If you want to rescind your request, please communicate that with The Standard. The Standard will then close your request, and you can be scheduled [*sic*] an appointment with Employee Health for a return to work release," or words to that effect. Plaintiff declined to rescind his request for reasonable accommodations.

27.

On or about April 17, 2023, Defendant granted all four of Plaintiff's requests for reasonable accommodation in part, subject to the following modifications:

(1) "Meal and rest breaks during scheduled hours – [Plaintiff] will need to work with [his] charge nurse and/or leadership to ensure [Plaintiff is] able to receive them.

(2) "10 hours of uninterrupted rest and recovery periods between shifts – This is a nurse staffing law requirement if a staff member works over 12 hours in a 24 hour period. [Plaintiff] can activate [his] 10-hour rest period, but it must be initiated by [Plaintiff]. Otherwise, [Plaintiff's] shifts are scheduled more than 10 hours apart from the end of [Plaintiff's] scheduled shift and start of [Plaintiff's] next one. If [Plaintiff] work[s] past [his] scheduled shift, Asante asks that [Plaintiff] follow the appropriate process to request [his] 10-hour rest period through the time record system, as well as notify [Plaintiff's] leadership and scheduler.

(3) "Respiratory PPE – If [Plaintiff] require[s] PPE other than what Asante currently provides, Asante needs to know details and specifics of the PPE [Plaintiff] require[s].

(4) "[Plaintiff] can return to the same work pattern/schedule [Plaintiff had] been working since [his] release in January 2023."

28.

Plaintiff's reasonable accommodations, as modified, were initially to remain in effect for only one month at a time before Plaintiff would be required to reapply

BAKER & LISS PC
1000 SW BROADWAY
SUITE 2300
PORTLAND, OR 97205
PHONE: (503) 234-8800

for accommodations. This created undue burden on Plaintiff and Defendant eventually agreed to allow Plaintiff's accommodations to remain in effect until Plaintiff either no longer required accommodations or until Plaintiff requested additional support or accommodations.

29.

Plaintiff maintained a good faith belief that Defendant's failure to reinstate his additional weekly charge nurse shift constituted retaliation for his filing of workers' compensation claims and his requests for reasonable accommodations. Despite Defendant's retaliation, Plaintiff accepted Defendant's reasonable accommodations, as modified, and was allowed to return to work.

30.

On or about April 20, 2023, Plaintiff's labor representative filed an ONA grievance on Plaintiff's behalf alleging discriminatory treatment by Defendant regarding Plaintiff's reasonable accommodations and payroll errors related to Plaintiff's medical leave.

31.

On or about May 17, 2023, Plaintiff again experienced symptoms related to his long COVID while at work. Plaintiff was readmitted to Defendant's facility for treatment of his symptoms.

32.

Following Plaintiff's hospitalization, Defendant immediately placed Plaintiff on a second leave of absence despite no such leave having been requested by either Plaintiff or Plaintiff's physician. Plaintiff suspected that Defendant placed Plaintiff on the second leave of absence in retaliation for filing the ONA grievance.

///

///

Page 9 – COMPLAINT

33.

Plaintiff notified Defendant on or about May 24, 2023 that neither he, nor his physician, had asked for a leave of absence and requested that he be reinstated. In or around late May or early June of 2023, Defendant allowed Plaintiff to return to work.

34.

Throughout the duration of Plaintiff's involuntary leave of absence, Plaintiff was forced to utilize approximately 85 hours of his earned time off (hereinafter "ETO").

35.

On or about May 30, 2023, Plaintiff reported to Defendant's compliance hotline that Defendant was retaliating against Plaintiff for requesting reasonable accommodations. Additionally, Plaintiff reported that Defendant had fraudulently placed him on a leave of absence despite his willingness to work and that this involuntary leave of absence had forced Plaintiff to use approximately 85 hours of ETO. Lastly, Plaintiff reported his good faith belief that Defendant was subjecting him to disparate treatment due to his status as an ONA shop steward and/or because of his previous reports regarding unsafe conditions in Defendant's workplace. Defendant hired an independent third-party investigator to investigate Plaintiff's concerns.

36.

On or about June 30, 2023, Defendant approved Plaintiff's request for intermittent leave to accommodate his disability starting on or about June 8, 2023 through May 31, 2024.

///

///

Page 10 – COMPLAINT

37.

On or about July 11, 2023, Plaintiff again reported to Defendant that his ETO hours had been inappropriately depleted. Plaintiff further complained that Defendant appeared to have falsified documents relating to Plaintiff's payroll, FMLA, and OFLA records, and that grievances either had been or would soon be filed to address these issues.

38.

On or about September 19, 2023, Defendant's HR responded to Plaintiff's May 30, 2023 grievance by informing Plaintiff that Defendant would credit back 84 hours of FMLA/OFLA leave to Plaintiff's leave bank. Additionally, Defendant agreed to return any ETO hours Plaintiff had used during his involuntary two-week leave of absence.

39.

On or about October 17, 2023, Defendant informed Plaintiff that the independent investigator had concluded its investigation into Plaintiff's May 30, 2023 compliance hotline report. The investigator concluded that Plaintiff's reports of illegal discrimination, retaliation, or fraud could not be substantiated. However, the investigator also concluded that Defendant had made mistakes when handling Plaintiff's leave requests and that these mistakes resulted in Defendant incorrectly deducting hours from Plaintiff's FMLA/OFLA leave bank. Furthermore, the investigator stated that "[Defendant's] communications to [Plaintiff] could have been more clear and complete, especially with regard to the fact that [Plaintiff's] ETO was to be used to cover [Plaintiff's] leave period," or words to that effect.

40.

On or about November 30, 2023, Defendant changed its scheduling policy by reducing the number of overtime hours that nursing staff were allowed to work.

Page 11 – COMPLAINT

Defendant asserted that his change in policy was implemented as a cost saving measure.

41.

Soon thereafter, Plaintiff notified Defendant that the recent employee scheduling changes were causing staffing shortages. As a result of these staffing shortages, Plaintiff was frequently unable to take his regular breaks and mealtimes, which was one of the reasonable accommodations Defendant had previously approved for Plaintiff. Plaintiff also reported his good faith belief that Defendant's changes to Defendant's scheduling policy were unlawful, violated the CBA, and endangered patients.

42.

Several weeks later, Defendant notified staff that, due to budget cuts, Defendant could not ensure employees would receive breaks or mealtimes.

43.

Following Defendant's notice, Defendant's HR declined to renew Plaintiff's reasonable accommodation of regular breaks and mealtimes. However, Defendant continued to provide this same accommodation to breastfeeding employees who also worked in the CVICU and who shared the same or similar job title as Plaintiff. Plaintiff subsequently reported that Defendant was singling Plaintiff out due to his protected status and that Defendant was subjecting him to disparate treatment by revoking his break and mealtime accommodation.

44.

Because Defendant made clear that it would no longer honor Plaintiff's reasonable accommodations, on or about December 12, 2023, Plaintiff asked Defendant to provide him with the paperwork necessary to begin the process of modifying and/or extending his approved reasonable accommodations.

**BAKER & LISS PC**
1000 SW BROADWAY
SUITE 2300
PORTLAND, OR 97205
PHONE: (503) 234-8800

Case 1:25-cv-02363-CL     Document 1     Filed 12/18/25     Page 13 of 30

45.

On or about December 22, 2023, Plaintiff followed up with Defendant via email regarding his December 12, 2023 request. Plaintiff restated in part, "there is a recurrent problem of inadequate nursing staff in the CVICU to meet patient needs and receive meals/breaks" or words to that effect.

46.

In response to Plaintiff's ongoing reporting, Defendant eventually acknowledged the present staffing shortage yet simultaneously failed to take any action to rectify the situation.

47.

On or about December 29, 2023, Plaintiff submitted a complaint to Defendant's compliance hotline concerning Defendant's retaliation and disability discrimination against Plaintiff. In part, Plaintiff reported that Defendant was retaliating against him by: (1) refusing to engage in the interactive process in good faith; (2) ignoring Plaintiff's communications regarding his ADA accommodations; and (3) ignoring Plaintiff's reports and/or complaints of staffing shortages and safety violations.

48.

On or about January 8, 2024, Defendant removed yet another charge nurse shift from Plaintiff's weekly schedule. Plaintiff felt Defendant's removal of this additional charge nurse shift was retaliation against Plaintiff for submitting a complaint to Defendant's compliance hotline.

49.

On or about January 9, 2024, Plaintiff filed an ONA association grievance on behalf of himself and CVICU staff reporting information Plaintiff believed in good faith was a violation of state or federal law, rule, and/or regulation as well as

BAKER & LISS PC
1000 SW BROADWAY
SUITE 2300
PORTLAND, OR 97205
PHONE: (503) 234-8800

violations of the CBA. The ONA association grievance asserted that Defendant's violations had resulted in dangerously low staffing levels that unlawfully placed patients' safety at risk. Plaintiff also alleged Defendant retaliated and discriminated against Plaintiff on the basis of his disability.

50.

In or about February of 2024, Defendant notified Plaintiff that it had retained outside legal counsel to investigate Plaintiff's ongoing complaints and reports of retaliation and ADA discrimination. Plaintiff responded by informing Defendant's management that they would need to speak to his workers' compensation attorney regarding Plaintiff's reasonable accommodations as he no longer felt safe engaging in the interactive process without legal representation.

51.

For the remainder of Plaintiff's employment, Defendant repeatedly and continuously refused to allow Plaintiff's attorney to participate in the interactive process or in the subsequent investigatory and disciplinary actions that Defendant took against him.

52.

On or about July 12, 2024, Defendant responded to Plaintiff's December 12, 2023 request for modification of his reasonable accommodations. Specifically, Defendant stated:

> "We've reviewed your renewed request for accommodation to receive rest and meal breaks, and determined that this not a request for 'accommodation' as you are already entitled to and we already strive to provide regular rest and meal breaks in accordance with Oregon law. We understand that we previously 'approved' a similar prior request, but that was mistaken terminology as this is not, in fact, an 'accommodation' but we did want to acknowledge your entitlement to rest and meal breaks under the law . . . ."

///

Page 14 – COMPLAINT

Despite Defendant's recognition that Plaintiff is entitled by law to regular rest and meal breaks, Defendant continued to fail to provide Plaintiff regular rest and meal breaks.

53.

Throughout 2024, Plaintiff repeatedly reported issues to Defendant regarding conditions within Defendant's workplace. Specifically, Plaintiff reported that staffing shortages were causing high levels of patient acuity and nursing care intensity resulting in preventable patient harm and even death. Plaintiff also reported that Defendant's continued failure to honor Plaintiff's reasonable accommodations was resulting in adverse impacts on Plaintiff's health and work performance.

54.

In or about July of 2024, Plaintiff underwent surgery to have a pacemaker installed to minimize the severity of Plaintiff's long COVID symptoms.

55.

On or about July 22, 2024, Plaintiff submitted an ONA grievance alleging that Defendant was in violation of the CBA as well as state and federal laws by discriminating against him on the basis of his disability and failing to provide him with reasonable accommodations. Plaintiff further reported that Defendant had inappropriately depleted Plaintiff's FMLA, OFLA, ETO, and Employee Sponsored Disability Plan (hereinafter "EDSP") hours resulting in loss of Plaintiff's wages and benefits and risk of possible termination.

56.

In or about early August of 2024, while on leave, Plaintiff submitted a new request for reasonable accommodations related to his pacemaker placement and long COVID. Plaintiff's supporting medical certification recommended that his leave

Page 15 – COMPLAINT

be continued to September of 2024. Plaintiff's medical certification also recommended the following accommodations:

(1) "Avoid duties within MRI strong magnetic fields, near Electrical Cautery or areas of elevated electrical interference.

(2) "No required work greater than 12 hours, and 10-hour uninterrupted rest periods between shifts.

(3) "15-minute breaks for every 4 hours worked, and 30-minute meal breaks for each 8 hours worked.

(4) "Intermittent leave for 1-3 days 2-3 times per week.

(5) "Not to lift over 15 pounds until September 9, 2024."

57.

On or about August 27, 2024, Defendant approved continuous leave as an accommodation from August 19, 2024 until September 9, 2024. Defendant later extended Plaintiff's leave through September 30, 2024.

58.

On or about October 1, 2024, Plaintiff returned to work.

59.

On or about October 8, 2024, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission (hereinafter "EEOC") against Defendant alleging, in part, that Defendant denied Plaintiff's reasonable accommodations, retaliated against Plaintiff for objecting to discrimination, and that Defendant denied Plaintiff's right to be represented by legal counsel.

60.

On or about November 1, 2024, Defendant notified Plaintiff that it had approved the following of Plaintiff's requests for reasonable accommodation:

(1) Continuous leave from on or about August 19, 2024 through September 30, 2024;

///

Page 16 – COMPLAINT

(2) Intermittent leave from on or about September 30, 2024 through
    December 30, 2024; and

(3) Exemption from duties within MRI strong magnetic fields, near electrical
    cautery, or areas of elevated electrical interference.

61.

Conversely, Defendant denied Plaintiff's requests for accommodation for ten
hours of uninterrupted rest periods between shifts and for regular breaks and
mealtimes. Defendant stated that because Plaintiff was already legally entitled to
ten hours of uninterrupted rest periods between shifts, Defendant was under no
obligation to approve it as a reasonable accommodation. Furthermore, Defendant
responded that it could not accommodate Plaintiff's request for regularly occurring
breaks and mealtimes and therefore refused to approve this request. Instead,
Defendant repeatedly pressed Plaintiff to transfer to a different department.

62.

On or about November 7, 2024, Plaintiff facilitated the filing of a CVICU
association grievance against Defendant on behalf of himself and CVICU staff. The
CVICU association grievance alleged specific violations by Defendant of the CBA as
well as violations of law regarding, in part, mandatory nurse staffing levels and
patient safety.

63.

On or about November 26, 2024, Defendant issued Plaintiff a final warning.
Defendant's purported reason for issuing the warning was that Plaintiff had made
complaints and reports to Defendant's compliance hotline on seven separate
occasions from in or about July of 2020 through October of 2024, in which he
claimed Defendant was retaliating against him and he reported information he
believed constituted violations of law, rule, and/or regulation. The final warning

Page 17 – COMPLAINT

BAKER & LISS PC
1000 SW BROADWAY
SUITE 2300
PORTLAND, OR 97205
PHONE: (503) 234-8800

stated that Plaintiff could face termination if he reports retaliation to Defendant's compliance hotline in the future.

64.

In or around 2023, Defendant learned that one of its nurses had been unlawfully replacing patients' fentanyl intravenous (hereinafter "IV") drip bags with tap water. This practice is known as "drug diversion" and resulted in the deaths of approximately 16 patients in Defendant's intensive care unit (hereinafter "ICU"). As a result of the drug diversion that had taken place within Defendant's ICU, Defendant was subsequently placed on an Action Plan at the direction of the Centers for Medicare & Medicaid Services, the Department of Health & Human Services, and the Oregon Health Authority in tandem with guidance from the Drug Enforcement Administration. The purpose of the Action Plan was to ensure that mandatory controlled substance policies were properly implemented and adhered to. Defendant's failure to follow the Action Plan could result in Defendant's loss of federal funding and the closure of Defendant's hospital.

65.

In or around early April of 2025, Plaintiff participated in a meeting with Defendant's Chief Nursing Officer and Chief Attorney regarding the implementation of the Action Plan. It was made clear in this meeting that any failure to follow the required action plan would result in immediate discipline, mandatory drug testing, and/or termination of employment.

66.

On or about April 15, 2025, Plaintiff noticed that two Patient-Controlled Analgesia (hereinafter "PCA") pumps had been inadvertently left in a patient's room. PCA pumps are medical devices that allow patients to self-administer pain relief medication, typically opioids and/or other controlled substances.

**BAKER & LISS PC**
1000 SW BROADWAY
SUITE 2300
PORTLAND, OR 97205
PHONE: (503) 234-8800

67.

The two pumps located in the patient's room needed to be cleaned and returned to Defendant's equipment room. Because these pumps contain controlled substances, they could only be moved after removing a security lock from the IV pole to which they attach. Doing so requires a PCA key, which must be checked out from an automated medication system, or Omnicell. Pursuant to the Action Plan between Defendant and the State of Oregon, after a PCA key is checked out, the PCA key must be returned to the Omnicell within 30 minutes.

68.

Plaintiff checked out a PCA key from Defendant's Omnicell under the name of the patient assigned to the room in which the pumps were located. Upon attempting to return the key, the Omnicell requested that Plaintiff enter a "key tag number." The key Plaintiff had checked out did not have a visible key tag number, and therefore, Plaintiff was unable to return the key.

69.

Plaintiff approached the charge nurse on duty for guidance on how to proceed regarding the unmarked PCA key. Like Plaintiff, the charge nurse also had not previously encountered this situation and was unaware of how to proceed. Eventually, Plaintiff was able to hand off the key to the Defendant's night shift nursing supervisor who took possession of the key and logged her receipt of it.

70.

Later during Plaintiff's shift, the same supervisor informed Plaintiff that management was instructing Plaintiff "to create a number and just return the key," or words to that effect. Plaintiff believed doing so would violate controlled substance standards set out by the Action Plan and responded that he would not falsify the number. The supervisor then placed a new number on the key tag, entered this

BAKER & LISS PC
1000 SW BROADWAY
SUITE 2300
PORTLAND, OR 97205
PHONE: (503) 234-8800

number into the system, and asked Plaintiff to witness her return of this newly numbered PCA key.

71.

Plaintiff then reported the PCA key incident via email to Defendant's management and his labor representative. Plaintiff included the name and medical record number (hereinafter "MRN") of the patient in whose room the pumps had been as a means for allowing management to investigate the incident.

72.

On or about May 14, 2025, Defendant's management notified Plaintiff that he had disclosed protected patient health information to an unauthorized individual. Plaintiff later discovered that Defendant's management was likely referring to the email regarding the PCA key that he sent to Defendant's management and Plaintiff's labor representative. Defendant stated that Plaintiff's email constituted a violation of HIPAA and that Defendant would be investigating Plaintiff's actions.

73.

On or about June 9, 2025, Plaintiff's labor representative submitted a grievance on his behalf addressing several unresolved issues, including but not limited to: (1) Defendant's repeated violations of scheduling requirements and inadequate staffing; (2) Defendant's ongoing retaliation, discrimination, and ADA violations against Plaintiff; (3) unsafe controlled substance handling practices; (4) denial of reasonable ADA accommodations; and (5) unsafe working conditions.

74.

On or about June 10, 2025, Plaintiff filed a complaint with the Oregon Health Authority (hereinafter "OHA") alleging rest and/or meal period violations against Defendant. ONA subsequently referred Plaintiff's complaint to the Oregon Bureau of Labor & Industries (hereinafter "BOLI"). On or about June 11, 2025,

BAKER & LISS PC
1000 SW BROADWAY
SUITE 2300
PORTLAND, OR 97205
PHONE: (503) 234-8800

BOLI notified Defendant that Plaintiff had filed a rest and/or meal period violation complaint against Defendant.

75.

On or about June 23, 2025, Defendant terminated Plaintiff's employment. Defendant's purported reason for the termination was Plaintiff's alleged violation of HIPAA.

76.

On information and belief, multiple individuals within Defendant's management, including the individual responsible for Plaintiff's termination, have committed similar or more egregious HIPAA violations while working for Defendant. On information and belief, none of the aforementioned individuals were terminated for such violations.

77.

Plaintiff timely filed complaints with the EEOC, which were co-filed with BOLI, against Defendant. On or about September 23, 2025, BOLI issued a Notice of Right to Sue in one of Plaintiff's charges. On or about October 31, 2025, BOLI issued two Notices of Substantial Evidence as to Plaintiff's remaining charges, finding substantial evidence of Plaintiff's claims under ORS 659A.030(1)(f) and ORS 659A.199.

**First Claim for Relief**

**42 U.S.C. § 12112 – Disability/Perceived Disability Discrimination**

78.

Plaintiff realleges paragraphs 1 through 77 above as fully set forth herein.

79.

At all material times, Plaintiff was a qualified person with a disability as defined by 42 U.S.C. § 12102.

///

Page 21 – COMPLAINT

80.

Defendant took adverse employment actions against Plaintiff in violation of his federally protected rights, including but not limited to subjecting him to disparate treatment, disciplining Plaintiff, failing to investigate Plaintiff's complaints, failing to engage in the interactive process, denying Plaintiff's requests for reasonable accommodations, restricting Plaintiff's access to medical care, reducing Plaintiff's hours, placing Plaintiff on administrative leave, and/or terminating Plaintiff's employment. Plaintiff's disability, perceived disability, and/or record of a disability were but for causes of Defendant's adverse employment actions in violation of 42 U.S.C. § 12112.

81.

As a result of the discrimination by Defendant, Plaintiff has incurred economic damages including lost wages, loss of increased pay, loss of future income, loss of paid time off, loss of or reduction in retirement benefits, loss of benefits including medical insurance, loss of prestige, and/or loss of future job opportunities in an amount to be proven at trial. Plaintiff will continue to have lost income and benefits into the future.

82.

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer, to some degree, stress, sadness, crying, anxiousness, fear, malaise, anger, lethargy, sleepless nights, humiliation, inconvenience, loss of confidence, difficulty obtaining new employment, and loss of enjoyment of life all to his non-pecuniary loss in an amount to be determined at trial.

83.

Defendant's conduct was willful, malicious, and/or done with reckless indifference to Plaintiff's federally protected rights. Defendant should be assessed punitive damages in an amount to be determined at trial.

///

BAKER & LISS PC
1000 SW BROADWAY
SUITE 2300
PORTLAND, OR 97205
PHONE: (503) 234-8800

84.

Plaintiff is entitled to recover his costs and attorney fees pursuant to 42 U.S.C. § 12205.

85.

Plaintiff also seeks equitable relief including an injunction enjoining Defendant from engaging in any employment practice which constitutes unlawful discrimination and/or retaliation under federal law.

## Second Claim for Relief

### ORS 659A.112 – Disability/Perceived Disability Discrimination

86.

Plaintiff realleges paragraphs 1 through 85 above as fully set forth herein.

87.

At all material times, Plaintiff was a qualified person with a disability as defined by ORS 659A.104.

88.

Defendant took adverse employment actions against Plaintiff in violation of his state protected rights, including but not limited to subjecting him to disparate treatment, disciplining Plaintiff, failing to investigate Plaintiff's complaints, failing to engage in the interactive process, denying Plaintiff's requests for reasonable accommodations, restricting Plaintiff's access to medical care, reducing Plaintiff's hours, placing Plaintiff on administrative leave, and/or terminating Plaintiff's employment. Plaintiff's disability, perceived disability, and/or record of a disability were but for causes of Defendant's adverse employment actions in violation of ORS 659A.112.

89.

As a result of the discrimination by Defendant, Plaintiff has incurred economic damages including lost wages, loss of increased pay, loss of future income, loss of paid time off, loss of or reduction in retirement benefits, loss of benefits including medical insurance, loss of prestige, and/or loss of future job opportunities

Page 23 – COMPLAINT

BAKER & LISS PC
1000 SW BROADWAY
SUITE 2300
PORTLAND, OR 97205
PHONE: (503) 234-8800

in an amount to be proven at trial. Plaintiff will continue to have lost income and benefits into the future.

90.

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer, to some degree, stress, sadness, crying, anxiousness, fear, malaise, anger, lethargy, sleepless nights, humiliation, inconvenience, loss of confidence, difficulty obtaining new employment, and loss of enjoyment of life all to his non-pecuniary loss in an amount to be determined at trial.

91.

Defendant's conduct was willful, malicious, and/or done with reckless indifference to Plaintiff's state protected rights. Defendant should be assessed punitive damages in an amount to be determined at trial.

92.

Plaintiff is entitled to recover his costs and attorney fees pursuant to ORS 659A.885 and ORS 20.107.

93.

Plaintiff also seeks equitable relief including an injunction enjoining Defendant from engaging in any employment practice which constitutes unlawful discrimination and/or retaliation under state law.

### Third Claim for Relief

### 42 U.S.C. § 12112 – Retaliation

94.

Plaintiff realleges paragraphs 1 through 93 above as fully set forth herein.

95.

Defendant retaliated against Plaintiff in the terms and conditions of his employment due to Plaintiff's good faith reporting and/or opposition to unlawful employment practices which violated 42 U.S.C. § 12112 and/or his engagement in

BAKER & LISS PC
1000 SW BROADWAY
SUITE 2300
PORTLAND, OR 97205
PHONE: (503) 234-8800

protected activities, including but not limited to requesting reasonable accommodations and attempting to engage in the interactive process.

96.

Plaintiff realleges his damages as stated in paragraphs 81 through 85 above.

## Fourth Claim for Relief

### ORS 659A.109 – Disability/Perceived Disability Retaliation

97.

Plaintiff realleges paragraphs 1 through 96 above as fully set forth herein.

98.

Plaintiff engaged in protected activity under ORS 659A.109, including but not limited to requesting reasonable accommodations and attempting to engage in the interactive process for his medical conditions.

99.

Defendant retaliated against Plaintiff in the terms and conditions of his employment in violation of ORS 659A.109 for engaging in protected activity.

100.

Plaintiff realleges his damages as stated in paragraphs 89 through 93 above.

## Fifth Claim for Relief

### ORS 659A.112, ORS 659A.118 – Failure to Engage in the Interactive Process and/or Accommodate Plaintiff's Disability

101.

Plaintiff realleges paragraphs 1 through 100 above as fully set forth herein.

102.

Defendant discriminated against Plaintiff in violation of his state protected rights under ORS 659A.112 and ORS 659A.118 by failing to engage in the interactive process and/or by failing to make reasonable accommodations for

BAKER & LISS PC
1000 SW BROADWAY
SUITE 2300
PORTLAND, OR 97205
PHONE: (503) 234-8800

Plaintiff's disability.

103.

Plaintiff realleges his damages as stated in paragraphs 89 through 93 above.

**<u>Sixth Claim for Relief</u>**

**ORS 659A.199 – Whistleblower Retaliation**

104.

Plaintiff realleges paragraphs 1 through 103 above as fully set forth herein.

105.

Defendant retaliated against Plaintiff in the terms and conditions of his employment in substantial part for his reporting in good faith information Plaintiff believed was evidence of violations of federal and/or state laws, rules, or regulations.

106.

Plaintiff realleges his damages as stated in paragraphs 89 through 93 above.

**<u>Seventh Claim for Relief</u>**

**ORS 659A.040 – Workers' Compensation Discrimination/Retaliation**

107.

Plaintiff realleges paragraphs 1 through 106 above as fully set forth herein.

108.

Defendant discriminated and/or retaliated against Plaintiff in the terms and conditions of his employment by subjecting him to disparate treatment, disciplining Plaintiff, failing to investigate Plaintiff's complaints, failing to engage in the interactive process, denying Plaintiff's requests for reasonable accommodations, restricting Plaintiff's access to medical care, reducing Plaintiff's hours, placing Plaintiff on administrative leave, and/or terminating Plaintiff's employment in substantial part for suffering an alleged work-related injury and/or applying for

**BAKER & LISS PC**
1000 SW BROADWAY
SUITE 2300
PORTLAND, OR 97205
PHONE: (503) 234-8800

benefits and/or invoking or utilizing the procedures provided for in ORS Chapter 656.

109.

Plaintiff realleges his damages as stated in paragraphs 89 through 93 above.

**Eighth Claim for Relief**

**29 U.S.C. § 2615 – FMLA Interference, Discrimination, and/or Retaliation**

110.

Plaintiff realleges paragraphs 1 through 109 above as fully set forth herein.

111.

At all material times, Plaintiff worked at least 1,250 hours during the 12-month period immediately preceding his termination.

112.

Plaintiff inquired about, utilized, and/or attempted to utilize leave that was protected under federal law.

113.

As set forth above, Defendant willfully interfered with, discriminated against, and/or retaliated against Plaintiff for invoking, utilizing, and/or attempting to utilize, leave protected under FMLA by taking adverse employment action against Plaintiff.

114.

As a result of Defendant's violation of the law, Plaintiff has incurred economic damages including but not limited to lost wages, loss of increased pay, loss of future income, loss of paid time off, loss of or reduction in retirement benefits, loss of fringe benefits, loss of prestige, and/or loss of future job opportunities, in an amount to be proven at trial. Plaintiff will continue to have lost income and benefits into the future.

Page 27 – COMPLAINT

**BAKER & LISS PC**
1000 SW BROADWAY
SUITE 2300
PORTLAND, OR 97205
PHONE: (503) 234-8800

115.

Plaintiff is entitled to interest on the amount of damages alleged in paragraph 114 calculated at the prevailing rate pursuant to 26 U.S.C. § 2618(a)(1)(A)(iii).

116.

Plaintiff is entitled to liquidated damages equal to the sum of the amount described in paragraph 114 plus the interest described in paragraph 115 pursuant to 26 U.S.C. § 2617(a)(1)(A)(iii).

117.

Plaintiff is entitled to recover his reasonable attorney fees, expert fees, costs, and disbursements pursuant to 26 U.S.C. § 2617(a)(3).

## Ninth Claim for Relief

### ORS 659A.233 – Retaliation

118.

Plaintiff realleges paragraphs 1 through 117 above as fully set forth herein.

119.

Defendant retaliated against Plaintiff in the terms and conditions of his employment by subjecting him to adverse actions, including subjecting him to disparate treatment, disciplining Plaintiff, failing to investigate Plaintiff's complaints, failing to engage in the interactive process, denying Plaintiff's requests for reasonable accommodations, restricting Plaintiff's access to medical care, reducing Plaintiff's hours, placing Plaintiff on administrative leave, and/or terminating Plaintiff's employment because he in good faith reported possible violations of ORS chapter 441 or of ORS 443.400 to 443.455.

///

///

BAKER & LISS PC
1000 SW BROADWAY
SUITE 2300
PORTLAND, OR 97205
PHONE: (503) 234-8800

120.

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic damage in an amount to be proven at trial, including but not limited to damages for loss of employment, lost wages, loss of increased pay, loss of future income, loss of paid time off, loss of or reduction in retirement benefits, loss of fringe benefits, loss of prestige, and/or loss of future job opportunities, in an amount to be proven at trial. Plaintiff will continue to have lost income and benefits into the future.

121.

Pursuant to ORS 659A.885, Plaintiff is entitled to recover his reasonable attorney fees, expert fees, costs, and disbursements.

## Tenth Claim for Relief

## Wrongful Discharge

122.

Plaintiff realleges paragraphs 1 through 121 above as fully set forth herein.

123.

At all material times, the public policy of Oregon prohibits an employer from retaliating against an employee because the employee in good faith brings evidence of inappropriate care or any other violation of law or rules to the proper authority. This public policy is embodied in common law, statutes, and regulations of the State of Oregon and the United States protecting the public and employees including but not limited to ORS chapter 441, ORS 443.400 to 443.455, ORS 659A.233, and *Yeager v. Providence Health System Oregon*, 195 Or App 134 (2004).

124.

Defendant, through its agents and/or employees, violated the above public policies by discriminating and retaliating against Plaintiff for in good faith bringing

Page 29 – COMPLAINT

BAKER & LISS PC
1000 SW BROADWAY
SUITE 2300
PORTLAND, OR 97205
PHONE: (503) 234-8800

evidence of inappropriate care or any other violation of law or rules to the attention of the proper authority.

125.

Plaintiff realleges his damages as stated in paragraphs 89 through 93 above.

**<u>Prayer for Relief</u>**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.  For permanent injunctive relief enjoining Defendant, its officers, employees, and agents from engaging in any employment practice which constitutes unlawful discrimination and/or retaliation under federal and state law;

2.  Economic damages and future losses to be determined at trial;

3.  Non-economic damages to be determined at trial;

4.  Liquidated damages to be determined at trial;

5.  Interest as allowed under the law;

6.  Punitive damages in an amount to be determined at trial;

7.  Reasonable costs and attorney fees; and

8.  For such other and further relief as the Court may deem just and equitable.

DATED this 18th day of December, 2025.

BAKER & LISS PC

*s/Cameron J. Taylor*
Aaron W. Baker, OSB No. 922220
Serena L. Liss, OSB No. 154799
Cameron J. Taylor, OSB No. 256661
Attorneys for Plaintiff

Page 30 – COMPLAINT