**SARAH AMES BENEDICT, OSB #132675**
sarahbenedict@dwt.com
**DOMINIK MACKINNON, OSB #231723**
dominikmackinnon@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
Telephone:  (503) 241-2300
Facsimile:  (503) 778-5299

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| KEITH CODDINGTON, an individual,, <br><br> Plaintiff, <br><br> v. <br><br> ASANTE dba ASANTE ROGUE REGIONAL MEDICAL CENTER, a domestic nonprofit corporation, <br><br> Defendant. | Case No. 1:25-CV-02363-CL <br><br> **DEFENDANT'S MOTION TO STAY** |

### LR 7-1 CERTIFICATION

The parties have made a good faith effort through a telephone conference to resolve the dispute raised in this Motion and have been unable to do so.  Based on the parties' conferral, Asante understands that Mr. Coddington may abandon his labor arbitration, potentially mooting this Motion.  As of the date of this filing, he has not yet done so.

Page 1 – DEFENDANT'S MOTION TO STAY

## MOTION

Defendant Asante moves this Court to stay the proceedings pursuant to its inherent power, while the parties complete the related arbitration initiated by Mr. Coddington.  This Motion is supported by the pleadings on file, the following points of authority, and the Declaration of Dominik Mackinnon in Support of Defendant's Motion to Stay ("Mackinnon Decl.").

## I.    INTRODUCTION

This action should be stayed because it seeks to litigate nearly all of the factual issues that are the subject of a forthcoming labor arbitration advanced by Mr. Coddington.  Proceeding in this federal action concurrent with an arbitration involving the same operative facts creates duplicative proceedings that risks not only inconsistent rulings but also unnecessary expense and burden to the parties and the Court.

In the interest of judicial economy, orderly case management, and fundamental fairness, the Court should exercise its inherent authority to stay this action pending resolution of the parallel arbitration.

## II.    BACKGROUND

Mr. Coddington is a former Asante employee who worked in Asante's Cardiovascular Intensive Care Unit as a nurse, and at times as a charge nurse, from August 2003 through June 2025.  Complaint (dkt. 1) ("Compl.") ¶¶ 9, 75.  The terms and conditions of Mr. Coddington's employment were governed by a collective bargaining agreement ("CBA").[1]  Compl. ¶ 4; *see also* Mackinnon Decl., Ex. 1.  There are several sections of the CBA that are relevant to this lawsuit:

- Section 1.2 governs the removal of a nurse's charge nurse duties.  *Id.*, p. 12.

---

[1] The collective bargaining agreements in effect at all times relevant to the Complaint are substantially the same in all respects material to this lawsuit. *See* Mackinnon Decl., Exs. 1, 2. Hereinafter, Asante will refer to the collective bargaining agreement in effect from 2023 through 2026, attached as Exhibit 1 to the Mackinnon Decl.

Page 2 – DEFENDANT'S MOTION TO STAY

- Section 2.1 prohibits Asante from discriminating against its nurses on the basis of a nurse's physical disability.  *Id.*, p. 16.

- Section 2.2 imposes obligations on Asante and nurses when they are navigating a nurse's request for reasonable accommodations.  *Id.*

- Article 9 of the CBA governs the accrual and application of Asante's Earned Time Off ("ETO") benefit, which provides nurses flexibility in their use of time off, including for holiday, sick time, and vacation.  *Id.*, p. 55-67.

Importantly, the CBA further prescribes a dispute resolution process, which a nurse may invoke by filing a "grievance."  *Id.*, p. 106.  If a nurse is unsatisfied with Asante's attempt to resolve the grievance, a nurse may choose to advance their grievance to arbitration for final resolution.  *Id.*, p. 107-109.  For grievances arising under the CBA's prohibition against discrimination (Section 2.1) the arbitrator "may apply settled law under the Oregon Discrimination Laws, Title VII of the Civil Rights Act of 1964, or the Civil Rights Act of 1886," as well as "decisions of the Supreme Courts of the United States or the State of Oregon." *Id.*, p. 111.

Mr. Coddington alleges on numerous occasions throughout the Complaint that he was discriminated against, retaliated against, or otherwise subject to conduct that violated the CBA. From what Asante can discern, the following allegations underpin Mr. Coddington's various claims:

- Asante allegedly inappropriately reduced Mr. Coddington's charge nurse shifts, in claimed retaliation for protected activity.  Compl. ¶ 18.  (Claim 7)

- Asante allegedly prohibited its occupational health department from scheduling appointments with Mr. Coddington, leading to a myriad of claims.  Compl. ¶ 24. (Claims 1, 2, 5, 7)

- Asante allegedly inappropriately placed Mr. Coddington on an administrative leave. Compl. ¶ 25.  (Claims 3, 4)

Page 3 – DEFENDANT'S MOTION TO STAY

- Asante allegedly inappropriately failed to reinstate Mr. Coddington's charge nurse shift, due to claimed retaliatory animus.  Compl. ¶ 29.  (Claims 3, 4, 7)

- Asante allegedly placed Mr. Coddington on a second leave of absence, in claimed retaliation for filing a grievance under the CBA.  Compl. ¶ 32.  (Claims 6, 9)

- Asante allegedly wrongfully depleting Mr. Coddington's ETO.  Compl. ¶ 37.  (Claim 8)

- Asante allegedly failed to provide and/or denied Mr. Coddington regular breaks and mealtimes.  Compl. ¶¶ 43, 44, 47, 53, 61.  (Claims 1, 2, 5)

- Asante allegedly inappropriately removed a charge nurse shift from Mr. Coddington's weekly schedule.  Compl. ¶ 48.  (Claims 6, 9)

Mr. Coddington also alleges that he filed six grievances, four of which he elected to take to arbitration pursuant to the CBA, and all of which involve the same factual allegations (listed above) that give rise to his various claim brought here.  Specifically, Mr. Coddington's currently pending grievances claim:

- Asante reduced his charge nurse shifts from four shifts per pay period to three shifts per pay period, in violation of the CBA.  Compl. ¶ 18; *see* Mackinnon Decl. Ex. 3 (Mr. Coddington's June 2021 grievance); ¶ 5.

- Asante discriminated against him by failing to accommodate his disability, retaliated against him for requesting a disability-related accommodation, and improperly administered his medical leave under the CBA.  Compl. ¶ 30; *see* Mackinnon Decl. Ex. 4 (Mr. Coddington's April 2023 grievance); ¶ 7.

- Asante again discriminated against him by failing to accommodate his disability and improperly depleted his ETO, in violation of the CBA.  Compl. ¶ 55; *see* Mackinnon Decl. Ex. 5 (Mr. Coddington's July 2024 grievance); ¶ 9.

- Asante once more discriminated against him based on his disability, retaliated against him, failed to comply with scheduling requirements, and failed to provide

Page 4 – DEFENDANT'S MOTION TO STAY

collaborative solutions to ensure his meal and rest breaks were received.  Compl. ¶ 73; *see* Mackinnon Decl. Ex. 6 (Mr. Coddington's June 2025 grievance); ¶ 11.

Each of these four grievances remain active and have been referred to arbitration. Mackinnon Decl. ¶ 12.  Asante is actively working with counsel for the Oregon Nurses Association, who are prosecuting these grievances on Mr. Coddington's behalf, to schedule arbitration and resolve these grievances, as required under the CBA.  *Id.* ¶ 13.  Critical to this Motion, the underlying conduct that Mr. Coddington alleges violated the CBA and gave rise to his grievances—again, which he elected to move to arbitration pursuant to a binding arbitration provision in the CBA—is also the basis for his various statutory and common law claims.

### III.    LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Nken v. Holder*, 556 U.S. 418, 433 (2009) (noting that a stay is "'an exercise of judicial discretion'" that is "'dependent upon the circumstances of the particular case'") (internal citation omitted).  "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.  This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court."  *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979).  "It would waste judicial resources and be burdensome upon the parties if the district court . . . were mandated to permit discovery, and upon completion of pretrial proceedings, to take evidence and determine the merits of the case at the same time as the arbitrator is going through a substantially parallel process."  *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864.

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

In deciding whether to grant a *Landis* stay, courts consider: (1) "'the possible damage which may result from the granting of a stay,'" (2) "'the hardship or inequity which a party may suffer in being required to go forward,'" and (3) "'the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.'" *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 268).

The Ninth Circuit reviews a district court's stay order for abuse of discretion. *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). "A district court abuses its discretion if it 'base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Id.* (internal citation omitted) (bracket in original).

## IV.    ARGUMENT

The Court should, pursuant to its inherent power, stay this case pending the conclusion of the forthcoming arbitration proceeding. A stay will not result in any damage to the Mr. Coddington or others. Conversely, allowing two largely duplicative proceedings to advance simultaneously would impose a hardship on Asante. Finally, because of overlapping facts in the arbitration and this action, the arbitration is likely to clarify, narrow, and potentially resolve many of the factual and legal issues presented in the Complaint, thereby streamlining—or potentially obviating—certain disputes that may otherwise arise over the course of this action. Under these circumstances, a stay is an efficient and fair exercise of the Court's inherent authority. The Court should stay this case accordingly.

### 1.    Prong one is satisfied: no one will be damaged by a stay.

Staying this case will not harm either party. When examining if a stay will cause hardship, courts look at, for example, whether the relief sought has wider implications for non-parties. In *Lockyer*, the Ninth Circuit found there was a "fair possibility" of damage to others because the attorney general, who was suing a power company over its consolidation of power

Page 6 – DEFENDANT'S MOTION TO STAY

plants that raised antitrust concerns under the Clayton Act, sought injunctive relief on behalf of the "interests of the electricity consumers of northern California whose interests he seeks to protect." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112.  There, it was evident that the resulting delay from a stay could prejudice a wide swath of electricity consumers, who were allegedly at the mercy of a monopolistic utility, and therefore subjected to ongoing and future harm.  *Id*.

No such concern exists here.  Mr. Coddington seeks primarily monetary relief for alleged past harm in a routine employment dispute—not narrowly tailored injunctive relief to prevent ongoing or future harm, as was the case in *Lockyer*.  Nor can Mr. Coddington plausibly argue that proceeding with his arbitration first would cause him prejudice, given that he voluntarily chose to pursue arbitration in the first place and seeks to recover there, as well.  Simply put, there is no "fair possibility" of damage that would result from a stay.

### 2.    Prong two is satisfied: Asante will suffer a hardship if forced to proceed on two fronts simultaneously.

Forcing Asante to litigate essentially the same dispute in two forums simultaneously would impose hardship and inequity, as the substantial factual overlap between the parallel proceedings creates a risk of inconsistent findings and double recovery if the federal action proceeds unabated.  "The prospect of inconsistent results and piecemeal litigation over the same issues" is probative of a stay.  *Sanchez v. Green Messengers, Inc.*, 666 F.Supp.3d 1047, 1054 (N.D. Cal., Mar. 31, 2023) (granting a stay in part to avoid potentially inconsistent rulings where a federal wage action was brought alongside an ongoing state agency proceeding regarding the same unpaid wage allegations).

Here, because the same allegations that Mr. Coddington elected to advance to arbitration are also the same set of allegations undergirding his various statutory claims (e.g., Asante allegedly reduced Mr. Coddington's charge nurse shifts in retaliation for filing a workers' compensation claim (Compl. ¶ 18), failed to accommodate Mr. Coddington's disability by denying him meal and rest breaks as accommodations (Compl. ¶¶ 43, 44, 47, 53, 61), and

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

wrongfully depleted Mr. Coddington's leave benefits (Compl. ¶ 37)), there is a concrete risk that two decisionmakers could reach different results regarding the same set of facts. In effect, this gives Mr. Coddington two bites at the apple, imposing hardship and inequity on Asante. A stay avoids this risk of inconsistent rulings and the related hardship on Asante because it ensures that any potentially preclusive findings that result from arbitration can be properly placed before the Court to avoid relitigating.

Likewise, the potential for Mr. Coddington to collect monetary relief twice—in arbitration and this action—based on the same set of facts and alleged harm, further constitutes a hardship and inequity on Asante. It is well established that "an employee can seek more than remedy but may not recover twice for the same injury." *Oubichon v. N. Am. Rockwell Corp.*, 482 F.2d 569, 574 (9th Cir. 1973). Allowing two proceedings to adjudicate the same set of facts simultaneously runs the risk that a claimant could recovery twice for the same injury—a clear and obvious hardship on the defending party. But this risk is easily obviated by sequential, rather than simultaneous, proceedings because "where the employee receives an award or a settlement" in the first proceeding, "judicial relief can be tailored to avoid duplication and windfall gains" in the second proceeding. *Oubichon v. N. Am. Rockwell Corp.*, 482 F.2d 569, 573.

Absent a stay, this action presents a clear risk of double recovery. For example, in his July 2024 grievance, Mr. Coddington seeks reimbursement of his leave benefits, which he claims were improperly depleted. Mackinnon Decl., Ex. 5. At the same time, Mr. Coddington similarly seeks the value of his leave benefits under his FMLA interference claim in this suit. Compl. ¶ 114. Thus, there is a potential for Mr. Coddington to recover relief for the same injury in two separate forums. Staying this case pending resolution ensures that the Court can carefully structure any relief to avoid double recovery—mitigating the associated hardship to Asante.

### 3. Prong three is satisfied: a stay will simplify and clarify the issues in the litigation.

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

A stay is likely to simplify and clarify the facts at issue. As discussed above, the allegations giving rise to Mr. Coddington's claims are also the subject of his grievances, about which the arbitrator will make factual (and possibly legal[2]) determinations. For example, Mr. Coddington's allegations of disability related discrimination and retaliation (Compl. ¶¶ 24, 25, 29, 43, 44, 47, 53, 61), workers' compensation related discrimination and retaliation (Compl. ¶¶ 18, 24, 29), and leave interference (Compl. ¶ 37) are all before the arbitrator. *See* Mackinnon Decl. Exs., 3, 4, 5, 6. Thus, the forthcoming arbitration does not merely "bear upon" this case—in all material respects, it is nearly identical to this action. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which *bear upon* the case.") (emphasis added).

Given the substantial overlap in the factual allegations between these parallel proceedings, arbitration is certain to simplify—if not resolve[3]—the voluminous and intertangled allegations at issue here. The Ninth Circuit's holding in *Levya* illustrates this point. There, truck drivers who were party to a collective bargaining agreement brought a claim in federal court

---

[2] The arbitrator is likely to resolve each of these grievances by applying applicable federal and state law, pursuant to the CBA. *See* Mackinnon Decl., Ex. 1, at 111 (providing that for grievances arising under Article 2 (Nondiscrimination), the arbitrator may apply Oregon discrimination law, Title VII, and decisions of the United States and Oregon Supreme Courts).

[3] Asante takes no position on—and it would be premature to address—the preclusive effect of any arbitration findings or awards at this stage. It is sufficient that the arbitrator's decision *may* affect factual determinations in this action, as well as legal conclusions, given the potential for the arbitrator to rely on applicable substantive law to address Mr. Coddington's discrimination claims. *See Leyva*, 593 F.2d at 863-64 (explaining that a stay "does not require that the issues in [arbitration] are necessarily controlling of the action before the court."); *see also Sheridan v. Providence Health & Servs.-oregon*, No. 3:10-CV-00775-PK, 2011 WL 13250762, *12 (D. Or. Sept. 6, 2011) (holding that collateral estoppel could apply to an arbitrator's decision if the arbitrator "applied the relevant tests under federal or Oregon law[.]") *findings and recommendation adopted*, No. 10-CV-775-PK, 2011 WL 6887160 (D. Or. Dec. 29, 2011).

---

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax

under the Fair Labor Standards Act alleging that their employer failed to pay them overtime. *Levya*, at 859.  The district court granted the employer's motion to stay the case pending resolution of arbitration pursuant to the collective bargaining agreement, and the employees appealed.  *Id*.  The Ninth Circuit found that "sound reasons may exist" to stay the action under the district court's "power to control its own docket and to provide for the prompt and efficient determination of cases pending before it."  *Id.*, at 863.  The Ninth Circuit reasoned that the arbitrator would "no doubt" make factual findings about the "hours and work patterns of the claimants, and the amount of wages paid to them."  *Id*.  "These findings, as well as the documents and testimony produced during the arbitration hearing, may be of valuable assistance to the court in resolving the Fair Labor Standards Act claims. . . even under the assumption that the court is not bound and controlled by the arbitrator's conclusions."  *Id*.

Similarly here, the arbitrator will no doubt make findings about the underlying allegations of discrimination (e.g., whether Asante failed to accommodate Mr. Coddington's disability), retaliation (e.g., whether Asante took adverse action against Mr. Coddington because he filed a workers' compensation claim, requested accommodations, and reported good faith violations of the CBA and law), and other alleged actions (e.g., whether Asante interfered with Mr. Coddington's protected leave) that give rise to nine out of Mr. Coddington's ten claims.  *See also Lockyer v. Mirant Corp.*, 398 F.3d 1098, at 1111 (explaining that a stay is appropriate pending arbitration even where some claims were not subject to arbitration because "the arbitrable and non-arbitrable counts in the complaint overlapped a great deal both factually and legally.")  Like in *Levya*, these findings "may be of valuable assistance" to the Court and the parties in efficiently resolving Mr. Coddington's claims.

Beyond simplifying the numerous allegations and issues raised in the Complaint, staying the case is also consistent with and supported by longstanding federal labor policy.  A "central tenet" of federal labor law is that "it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance."  *Lingle v. Norge Div., of Magic Chef, Inc.*, 486

Page 10 – DEFENDANT'S MOTION TO STAY

U.S. 399, 411 (1988).  The seminal test for whether a dispute belongs in the realm of the arbitrator is whether the claim "'substantially depend[s] on' an interpretation" of the terms of the collective bargaining agreement.  *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1071 (9th Cir. 2007).

Here, several allegations in the Complaint will require interpretation of the CBA.  For example, determining whether Mr. Coddington's charge-nurse shifts were reduced in retaliation for filing a workers' compensation claim or making a compliance hotline report (Compl. ¶¶ 18, 48) will require interpretation of Section 1.2, which governs the conditions under which a nurse may be "removed" from a charge-nurse position. *See* Mackinnon Decl., Ex. 1, at p. 12. Similarly, evaluating the allegation that Mr. Coddington's ETO credit was "inappropriately depleted" as a form of discrimination or retaliation (Compl. ¶ 55) will require interpretation of Article 9 to determine, as an initial matter, whether the depletion was indeed improper. Mackinnon Decl., Ex. 1., p. 55-67.  These are questions of CBA interpretation that fall squarely within the arbitrator's purview under federal labor policy.  The Court should therefore stay this case pending resolution of the arbitration.

In short, all three *Landis* factors weigh heavily in favor of staying this action pending the resolution of arbitration.  The Court should exercise its discretion to stay this case.

## V.    CONCLUSION

For the foregoing reasons, and in the interest of judicial economy, orderly case management, and fundamental fairness, the Court should exercise its inherent authority to stay this action pending resolution of the forthcoming arbitration proceeding.  A stay will avoid duplicative and needlessly burdensome litigation, eliminate the risk of inconsistent rulings, conserve the resources of the Court and the parties, and simplify the issues, while imposing no cognizable prejudice on Mr. Coddington.  Accordingly, Asante respectfully requests that the Court stay this action in its entirety until arbitration has concluded.

Page 11 – DEFENDANT'S MOTION TO STAY

DATED this 23rd day of February, 2026.

**DAVIS WRIGHT TREMAINE LLP**


By s/ Dominik Mackinnon
    Sarah Ames Benedict, OSB #132675
    sarahbenedict@dwt.com
    Dominik Mackinnon, OSB #231723
    dominikmackinnon@dwt.com
    Telephone: (503) 241-2300
    Facsimile: (503) 778-5299

    Attorneys for Defendant Asante

DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
(503) 241-2300 main · (503) 778-5299 fax